**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Unión de Tronquistas de Puerto Rico Local 901, <br><br> Plaintiff, <br><br> v. <br><br> ARGOS Puerto Rico Corp., <br><br> Defendant. | **Civil No. 22-1506(GMM)** |

## OPINION AND ORDER

Before the Court is Defendant ARGOS Puerto Rico Corp.'s ("Argos" or "Defendant") *Motion for Summary Judgment* regarding Plaintiff Unión de Tronquistas de Puerto Rico Local 901's (the "Union") *Petition to Vacate Arbitration Award*, in a suit concerning arbitration proceedings between a union employee and his employer. (Docket No. 12).

For the reasons set forth below, Defendant's *Motion for Summary Judgment* is **GRANTED**.

### I. PROCEDURAL BACKGROUND

The Union and Argos are parties to a collective bargaining agreement (the "CBA"). (Docket No. 12-3). Article 13 of the CBA provides a procedure for the filing of employee complaints and grievances. (Id. at 23-27). On October 21, 2021, Neftalí Colón Morán ("Colón") was terminated from his employment. (Docket Nos. 12-4 and 17-1). On October 25, 2021, the Union filed a "Form to

Civil No. 22-1506(GMM)
Page -2-

Process Grievances" as a representative of Colón before the Human Resources Department Director Nathalie Rico ("Human Resources Director"). (Docket No. 17-3).

Eventually, on November 23, 2021, the Union filed an arbitration claim before the Bureau of Conciliation and Arbitration of the Puerto Rico Department of Labor and Human Resources, alleging that Colón's termination was unjustified. (Docket No. 12-6). After holding a hearing, Arbitrator Mariela Chez (the "Arbitrator") issued an Award that Colón's grievance was not procedurally arbitrable. (Docket No. 12-4).

Unsatisfied, on October 11, 2022, the Union filed a *Petition to Vacate Arbitration Award* before the Puerto Rico Court of First Instance of San Juan in the case captioned Unión de Tronquistas de Puerto Rico v. ARGOS de Puerto Rico Corp., Civil No. SJ2022CV08923. On October 20, 2022, Argos removed the case to federal court pursuant to 28 U.S.C. § 1441(a) and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). By means of its petition, the Union seeks to set aside and annul the Award in Case No. A-22-301, arguing that the Arbitrator erred when determining that the case was not procedurally arbitrable.

On March 7, 2023, Argos filed a *Motion for Summary Judgment*, accompanied by its *Memorandum of Law in Support of the Motion for Summary Judgment* and *Statement of Uncontested Material Facts in Support of the Motion for Summary Judgment* ("*Statement of*

*Uncontested Facts*"). (Docket Nos. 12, 12-1 and 12-2). Argos alleges that Colón failed to comply with the first and second steps set forth in Section B, subsections (1) and (2), of Article 13 of the CBA, since: (1) he did not "discuss" his claim regarding his dismissal with any of his immediate supervisors; (2) the October 25, 2021 second-step form did not make reference to the specific provision, article, and/or section of the CBA that he alleged Argos violated in relation his termination; and (3) he never requested a meeting with a Human Resources representative. Therefore, Argos contends that the Union fails to establish a valid ground upon which the Court may vacate the Award, since they "have not proven that the Award was unfounded in reason and/or in fact; based on faulty reasoning; or mistakenly based on an assumption that is a non-fact." (Docket No. 12-1 at 2).

On April 13, 2023, the Union filed its *Opposition to the Motion for Summary Judgment* arguing that the claim was procedurally arbitrable. The Union posits that although Argos raised the matter of procedural arbitrability alleging that the first step of the claims and grievances procedure under the CBA had not been followed, this argument fails. This, since they allege the employer created conditions preventing the Colón from being able to comply and, consequently, turning any effort on his part into an exercise of futility. Particularly, they claim that Colón could not comply with the first step of the procedure established in the CBA, since

Civil No. 22-1506(GMM)
Page -4-

he was terminated and was not present in his workplace to submit a claim to his immediate supervisor. (Docket No. 19). The Union did not file an opposing statement of material facts as required by Local Rule 56(c). On May 4, 2023, Argos filed a *Reply to Plaintiff's Opposition to the Motion for Summary Judgment*. (Docket No. 22).

## II. SUMMARY JUDGMENT STANDARD

A.   <u>Fed. R. Civ. P. 56</u>

Fed. R. Civ. P. 56 governs motions for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute in a material fact "if the evidence 'is such that a reasonable jury could resolve the point in favor of the non-moving party.'" <u>Taite v. Bridgewater State University, Board of Trustees</u>, 999 F.3d 86, 93 (1st Cir. 2021) (*quoting* <u>Ellis v. Fidelity Management Trust Company</u>, 883 F.3d 1, 7 (1st Cir. 2018)). In turn, a fact is material "if it 'has the potential of affecting the outcome of the case.'" <u>Id.</u> (*quoting* <u>Pérez-Cordero v. Wal-Mart P.R., Inc.</u>, 656 F.3d 19, 25 (1st Cir. 2011)). In making its determination, the Court will look to "the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. . ." <u>Johnson v. University of Puerto Rico</u>, 714

F.3d 48, 52 (1st Cir. 2013) (*citing* Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008)).

The movant has "the initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact' with definite and competent evidence." Arroyo-Ruiz v. Triple-S Management Group, 258 F.Supp.3d 240, 245 (D.P.R. 2017) (*quoting* Campos v. Van Ness, 711 F.3d 243, 247-48 (1st Cir. 2013)). "Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which [it] has the burden of proof, to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (*quoting* DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997)). Indeed, the non-movant is required to "present definite, competent evidence to rebut the motion." Martínez-Rodríguez v. Guevara, 597 F.3d 414, 419 (1st Cir. 2010) (*quoting* Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)).

Further, the Court must "draw [] all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation." Smith v. Jenkins, 732 F.3d 51, 76 (1st Cir. 2013). The Court must also refrain from engaging in assessing the credibility or weight of the evidence presented. *See* Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000) ("Credibility

determinations, the weighing of the evidence, and the drawing of
legitimate inferences from the facts are jury functions, not those
of a judge."). Facts which are properly supported "shall be deemed
admitted unless properly controverted" and the Court is free to
ignore such facts that are not properly supported. Rodríguez-
Severino v. UTC Aerospace Sys., No. 20-1901, 2022 WL 15234457, at
*5 (1st Cir. Oct. 27, 2022).

B.   Local Civ. R. 56

Local Civ. R. 56 also controls motions for summary judgment.
*See* Local Civ. R. 56. In sum, it requires that the non-movant
"admit, deny or qualify the facts supporting the motion for summary
judgment by reference to each numbered paragraph of the moving
party's statement of material facts." Local Civ. R. 56(c). If a
fact is not admitted, "the opposing statement shall support each
denial or qualification by a record citation. . ." Id. In its
opposing statement, the non-movant can include additional facts
supported by record citations. *See* Id. In turn, the movant "shall
submit with its reply a separate, short, and concise statement of
material facts, which shall be limited to any additional fact
submitted by the opposing party." Local Civ. R. 56(d). In its
statement, the movant shall admit, deny, or qualify those
additional facts. *See* Id. Any denial and qualification that the
movant raises must be supported by a record citation. *See* Id.

Civil No. 22-1506(GMM)
Page -7-

Failure to comply with Local Rule 56(c) allows the Court to accept a party's proposed facts as stated. *See* López-Hernández v. Terumo Puerto Rico LLC, 64 F.4th 22, 26 (1st Cir. 2023); *see also* Natal Pérez v. Oriental Bank & Trust, 291 F.Supp.3d 215, 219 (D.P.R. 2018) ("If a party improperly controverts the facts, Local Rule 56 allows the Court to treat the opposing party's facts as uncontroverted."). Litigants ignore Local Rule 56(c) at their peril. *See* López-Hernández, 64 F.4th at 26.

Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is-and what is not-genuinely controverted.'" Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir.2007) (*quoting* Calvi v. Knox Cty., 470 F.3d 422, 427 (1st Cir.2006)). When a party does not act in compliance with Local Rule 56(c), "a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated."

### III. UNCONTESTED FACTS

The Court notes Plaintiff did not admit, deny, or qualify the moving party's *Statement of Uncontested Facts*. Plaintiff ignored Local Rule 56 at its own risk by neglecting to admit, deny, or qualify Defendant's factual assertions. *See* P.R. Am. Ins. Co. v. Rivera-Vazquez, 603 F.3d 125, 131 (1st Cir.2010) ("[W]e have held with a regularity bordering on the monotonous that parties ignore the strictures of an 'anti-ferret' rule at their peril.") The

Civil No. 22-1506(GMM)
Page -8-

assertions contained in Defendants' *Statement of Uncontested Facts* (Docket No. 12-2) are hence deemed unopposed and admitted. Accordingly, the Court makes the following findings of fact:

1. For Argos's Dorado and San Juan operations, Argos and the Union are parties to a CBA that contains a mandatory grievance process, through which disputes related to the interpretation, application and/or compliance with the agreement must be conducted. (Docket Nos. 12-2 ¶ 1; 12-3 at 4).

2. Colón worked for Argos as an "Electrical and Mechanical Production Technician" until October 21, 2021. (Docket Nos. 12-2 ¶2; 12-4 at 5; 17-1).

3. On October 21, 2021, Colón was terminated from his employment at Argos for abandoning his job pursuant to Argos' employee handbook, as he was absent from work from October 15 through October 21, 2021, since he failed to comply with the company's COVID-19 protocol, which mandated that non-vaccinated employees had to get tested for COVID-19 on a weekly basis and had to submit the results to the company in order to enter the workplace. (Docket Nos. 12-2 ¶3; 12-4 at 5; 17-1).

4. On October 25, 2021, the Union filed a "Form to Process Grievances" as a representative for Colón before the Human Resources Director. The Union classified this document as the first step of the claims and grievances procedure. (Docket Nos. 12-4 at 5 and 17-3).

5. On October 26, 2021, the Human Resources Director sent a communication to the Union with the reasons for the determination made in relation to Colón. (Docket No. 17-1).

6. On October 29, 2021, the Union sent a letter to the Human Resources Director, requesting a date and time to discuss the claim in the third step. (Docket No. 17-4).

7.    On November 2, 2021, Human Resources Director sent
      an e-mail to the Union confirming the meeting and
      emphasizing that the Union did not comply with the
      first step of the process. (Docket No. 17-5).

8.    On November 23, 2021, the Union filed a claim at
      the Bureau of Conciliation and Arbitration of the
      Puerto Rico Department of Labor and Human
      Resources, under the mandatory grievance process
      contained in the CBA, challenging Colón's
      termination. (Docket Nos. 12-2 ¶4; 12-6).

9.    The arbitration hearing (the "hearing") was held on
      April 6, 2022. (Docket Nos. 12-2 ¶ 5; 12-4 at 1).

10.   At the beginning of the hearing, without trying the
      merits of the case, Argos sought for the Union's
      grievance to be dismissed because, according to
      Argos, the Union failed to comply with the
      grievance process set forth in Article 13 of the
      CBA. (Docket Nos. 12-2 ¶6; 12-4 at 2-6).

11.   Article 13 of the CBA specifically states the
      following, in relevant part:

### COMPLAINTS AND GRIEVANCES PROCESS

A.    A grievance or complaint for purposes of
      this Collective Bargaining Agreement
      will be a dispute or difference of
      interpretation that arises under its
      express provisions during the
      effectiveness of this Collective
      Bargaining Agreement.

B.    If any controversy, dispute, conflict or
      discrepancy or difference in
      interpretation between the UNION and the
      COMPANY involving the application of the
      express provisions of this Collective
      Bargaining Agreement, or any controversy
      or dispute or conflict arises between the
      UNION and the COMPANY about written
      admonishment, suspension or discharge of
      one or more employees, as defined below,
      that matter will be decided in a final

and mandatory manner in accordance with the following way:

(1)   (1st Step) If any employee has a complaint and/or grievance, the employee by him/herself or with the delegate of the UNION, must no later than five (5) workdays after the incident or motive of the complaint arising, discuss the matter with their immediate supervisor. That immediate supervisor must give a written answer to the matter within a term of five (5) workdays after having been presented. the time it takes an employee to discuss with his immediate supervisor will be paid by the COMPANY to the employee for their rate per regular hour of pay.

(2)   (2nd Step) If the immediate supervisor does not answer within the term of five (5) workdays of having been presented the complaint and/or grievance, of if having answered, his/her answer or solution is not, in the discretion of the employee, satisfactory, the employee may, through the delegate of the UNION and/or its syndical representative, file a written grievance to the Human Resources Director or his/her authorized representative. For the Complaint and/or Grievance to be valid the specific article and/or section that is being violated must be presented and a meeting will be requested with the Human Resources Representative. No

later than five (5) workdays
after filing the grievance,
the Human Resources Director
or his/her representative must
file his/her answer before the
UNION's representative.

(3)    (3rd Step) If the complaint is
not satisfactorily resolved in
the Second Step, the
Secretary-Treasurer of the
UNION, or who he/she appoints
as his/her representative will
request in writing a meeting
with the Corporate Director of
Human Resources or his/her
authorized representative
within the five (5) workdays
from which the Human Resources
Director of the COMPANY
answered or should have
answered in his/her Second
Step, which meeting must be
programmed within the next ten
(10) work days. The parties may
extend this time by mutual
agreement and any alternate
electronic method may be used
(videoconference, calls,
telephone conferences) to
carry it out. The Corporate
Director of Human Resources
will submit a written answer to
the Secretary-Treasurer within
five (5) workdays following
the date in which the meeting
took place.

(4)    (4th Step) If the complaint is
not decided in the Third Step,
the UNION may submit the matter
to Arbitration, no later than
ten (10) workdays after the
Corporate Director of Human
Resources answered or should
have answered.

>
> (5)  If the UNION or the COMPANY has
>       any complaint or grievance to
>       present to the other, they must
>       do so, no later than five (5)
>       workdays after an incident or
>       motive of the complaint having
>       occurred. If a satisfactory
>       solution is not reached, any of
>       the parties may request
>       arbitration to the
>       Conciliation and Arbitration
>       Bureau of the Labor and Human
>       Resources Department of Puerto
>       Rico.
>
> (Docket Nos. 12-2 ¶ 7; 12-3 at
> 20-22).

12.  During the hearing, Argos argued that Colón failed
     to comply with the first step set forth in Section
     B, subsection (1), of Article 13 of the CBA, as he
     did not "discuss" his claim regarding his dismissal
     with his supervisor. (Docket Nos. 12-2 ¶ 8; 12-4 at
     6-7).

13.  Further, Argos argued that Colón and the Union did
     not comply with the second step contained in
     Section (2) of Article 13 of the CBA, because the
     October 25, 2021 second-step form ("Form to Process
     Grievances") did not make reference to the specific
     CBA provision, article and/or section, that was
     allegedly violated by Argos in relation to the
     termination of the claimant and, also, did not
     request a meeting with a Human Resources
     representative. (Docket Nos. 12-2 ¶ 9; 12-4 at 6-
     7; 17-2 at 4-8).

14.  During the hearing, the parties submitted their
     respective documentary evidence and witnesses.
     Specifically, the parties submitted the CBA and the
     Union's October 25, 2021 "Form to Process
     Grievances". (Docket No. 12-2 ¶ 10).

15.  Also, Argos submitted the Human Resources
     Director's letter to the Union dated October 26,
     2021, while the Union submitted their letter dated
     October 29, 2021, and the Human Resources

Director's e-mail to the Union dated November 2, 2021. (Docket No. 12-2 ¶ 11).

16. Also, during the hearing, Colón's three (3) immediate supervisors, Juan Carlos Nieves ("Nieves"), Nelson Rivera ("Rivera"), and Carlos Sánchez ("Sánchez"), testified that: they occupied the position of Packaging and Grinding Supervisor; they supervised the different shifts; and they directly supervised Colón while he worked for Argos. (Docket No. 12-2 ¶ 12).

17. Nieves, Rivera, and Sánchez all testified that each of them supervised a specific shift, and, thus, they all directly supervised Colón depending on the shift that Colón was working. (Docket No. 12-2 ¶ 13).

18. Nieves and Rivera testified that, after Colón's termination on October 21, 2021, Colón did not contact them by any means or for any purpose whatsoever, including to discuss and/or to speak about his employment termination. (Docket No. 12-2 ¶ 14).

19. Sánchez testified that, a few days after Colón's termination, Colón called him on the phone and asked him if he knew that he was going to be terminated. Sánchez stated that Colón's purpose for calling was to determine whether Sánchez knew if he was going to be terminated and that Colón never discussed, debated, and/or argued with him the merits or the decision of his possible termination. (Docket No. 12-2 ¶ 15).

20. Colón confirmed Sánchez' testimony regarding the phone conversation they held a few days after Colón's termination, as he testified that the purpose of his call "was not to discuss his termination". (Docket No. 12-2 ¶ 16).

21. Colón testified that, at the time that he called Sánchez, he was not aware that he had been terminated, or that he would be terminated, as he had not yet received the termination letter, but that he had heard rumors that he had been

terminated, so he called Sánchez to find out
whether the rumors were true. (Docket No. 12-2 ¶
17).

22. Colón acknowledged during his testimony that, since
he did not know that he had been terminated when he
called Sánchez, he did not call Sánchez to discuss
his termination and, in fact, did not discuss his
dismissal with him (Sánchez) at all. (Docket No.
12-2 ¶ 18).

23. Argos' Human Resources Director testified that the
first complaint she ever received related to
Colón's termination was the Union's October 25,
2021 "Form to Process Grievances" and that the
Union identified such document as the "First Step".
(Docket No. 12-2 ¶ 19).

24. Also, the Human Resources Director testified, and
the October 25, 2021 "Form to Process Grievances"
demonstrates, that the Union's form does not
reference to the specific CBA provision, article
and/or section, that the Union claims to have been
violated by Argos and that the Union also did not
request a meeting with a Human Resources
representative by means of such document. (Docket
No. 12-2 ¶ 20).

25. The Human Resources Director added that the CBA
provision that the Union had to reference in
Colón's case was Article 4, titled "Management
Rights", which states that "[t]he COMPANY preserves
all the normal managerial and administrative
functions and prerogatives and the exclusive rights
to contract, operate and manage its business, for
the most effective productivity, including as an
example the right to […] terminate, or in any manner
discipline the employees for just cause…". (Docket
No. 12-2 ¶ 21).

26. The testimony also revealed that on October 26,
2021, the Human Resources Director responded to the
Union's October 25, 2021 "Form to Process
Grievances" via a letter which stated that Colón
was terminated from his employment at Argos for
cause, as he abandoned his job pursuant to Argos'

employee handbook, and failed to comply with the company's COVID-19 protocol, which mandated that nonvaccinated employees had to get tested for COVID-19 on a weekly basis and had to submit their test results to the company to enter the workplace. (Docket No. 12-2 ¶ 23).

27. The Human Resources Director also stated in her October 26, 2021 letter that the Union's complaint was not arbitrable as neither the Union nor Colón had complied with the mandatory grievance process set forth in Article 13 of the CBA. (Docket No. 12-2 ¶ 24).

28. On October 29, 2022, the Union sent a letter to Rico requesting a meeting to discuss Colón's complaint, and on November 2, 2022, Rico sent the Union an email confirming such meeting for November 3, 2022, while reiterating the company's position that Colón's complaint was not arbitrable. (Docket No. 12-2 ¶ 25).

29. The Union put forward two (2) witnesses during the hearing, Iván Pagán ("Pagán") and Luis González ("González"), who did not refute the fact that the Union and Colón failed to comply with the first two (2) steps of the mandatory grievance process established in Article 13 of the CBA. (Docket No. 12-2 ¶ 26).

30. Pagán testified that he had heard rumors that Colón had been, or would be, terminated from his employment and, thus, he had asked Sánchez whether he had any knowledge as to whether the rumors regarding Colón were true, to which Sánchez responded that he did not know of their veracity. (Docket No. 12-2 ¶ 27).

31. González testified that he did not ask and/or speak to any supervisor regarding Colón's termination. (Docket No. 12-2 ¶ 28).

32. González's testimony was limited to the October 25, 2021 "Form to Process Grievances." Yet, González stated that he did not prepare the October 25, 2021 "Form to Process Grievances" document and,

therefore, he did not have any personal knowledge as to the author's state of mind or as to the purpose for drafting such a document. (Docket No. 12-2 ¶ 29).

33. On May 6, 2022, Argos submitted its post-hearing brief to the Arbitrator. (Docket Nos. 12-2 ¶ 31; 17-2).

34. On May 27, 2022, the Union filed its post-hearing brief. (Docket Nos. 12-2 ¶ 32; 12-11).

35. On August 24, 2022, the Arbitrator issued an award granting Argos' request for dismissal of Colón's grievance and determining that the Union and Colón had failed to comply with the CBA's grievance procedure and, therefore, the grievance was not procedurally arbitrable. (Docket Nos. 12-2 ¶ 33; 12-4).

## IV. APPLICABLE LAW

A.  <u>Review under Section 301 of the LMRA</u>

Section 301 of the LMRA empowers federal courts to review arbitration conducted under the terms of a collective bargaining agreement. 29 U.S.C. § 185. Under this statute, the Court has limited jurisdiction to overturn the award on the merits, and also to ensure that the arbitrator does not ignore the contract and dispense "his own brand of industrial justice." <u>Pan Am. Grain Mfg., Inc. v. Congreso de Uniones Industriales De P.R.</u>, 544 F. Supp. 2d 95, 97 (D.P.R. 2008) (<i>citing</i> <u>Kraft Foods Inc. v. Office and Professional Employees International Union</u>, 203 F.3d 98, 100 (1st Cir. 2000)).

The scope of review allowed under Section 301, however, is "among the narrowest known in the law." Maine Cent. R.R. Co. v. Bhd. of Maint. of Way Employees, 873 F.2d 425, 428 (1st Cir. 1989). An arbitration award will be confirmed if it "rests on a plausible interpretation of the underlying contract." Salem Hosp. v. Massachusetts Nurses Ass'n, 449 F.3d 234, 238 (1st Cir. 2006). In fact, "[a]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38 (1987). It should not be a surprise, then, that federal courts rarely find cause to "tinker with an arbitral award made under the aegis of a collective bargaining agreement." El Dorado Tech. Servs., Inc. v. Union Gen. De Trabajadores De P.R., 961 F.2d 317, 318 (1st Cir. 1992).

However, "an arbitrator's decision is not entirely impervious to judicial oversight." Salem Hosp., 449 F.3d at 238. A labor arbitration award may be vacated on the merits if it was "(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." Local 1445, United Food & Commercial Workers Int'l Union, AFL-CIO v. Stop & Shop Cos., Inc., 776 F.2d 19, 21 (1st Cir. 1985); see also Trustees of Boston

University v. Boston University Chapter, 746 F.2d 924 (1st Cir.
1984). Likewise, review is proper if there exist "circumstances
that impugn[ ] the integrity of the arbitration." Ramirez-Lebron
v. Int'l Shipping Agency, Inc., 593 F.3d 124, 131 (1st Cir. 2010)
(citing Harris v. Chem. Leaman Tank Lines, Inc., 437 F.2d 167, 171
(5th Cir. 1971) (per curiam)). This can occur, for instance, if
the award was secured through fraud or deceit, or if the grievance
procedured was a "sham, substantially inadequate or substantially
unavailable." Id.

B.   Procedural Arbitrability

        "Issues of procedural arbitrability are for the arbitrator,
not the court, to decide." UMass Mem'l Med. Ctr., Inc. v. United
Food And Com. Workers Union, 527 F.3d 1, 5 (1st Cir. 2008). As the
First Circuit explained in Local 285, Service Employees
International Union v. Nonotuck Resource Associates, Inc., 64 F.3d
735, 739 (1st Cir.1995), "[t]hirty years of Supreme Court and
federal circuit court precedent have established that issues
concerning the timeliness of a filed grievance are 'classic'
procedural questions to be decided by an arbitrator."

        It is well settled "that the district court's review of
arbitral awards must be 'extremely narrow and exceedingly
deferential.'" Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321,
330 (1st Cir.2000) (quoting Wheelabrator Envirotech Operating
Servs., Inc. v. Mass. Laborers Dist. Council Local 1144, 88 F.3d

Civil No. 22-1506(GMM)
Page -19-

40, 43 (1st Cir.1996)). The First Circuit has continuously found arbitral awards "nearly impervious to judicial oversight," <u>Teamsters Local Union No. 42 v. Supervalu, Inc.</u>, 212 F.3d 59, 61 (1st Cir.2000), because both parties "have contracted to have disputes settled by an arbitrator" and therefore "it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept," <u>United Paperworkers Int'l Union</u>, 484 U.S. at 37-38. Further, "[t]hat a reviewing court is convinced that the arbitrators committed error — even serious error — does not justify setting aside the arbitral decision. This remains true whether the arbitrator's apparent error concerns a matter of law or a matter of fact." <u>Cytyc Corp. v. DEKA Prods. Ltd. P'ship</u>, 439 F.3d 27, 32 (1st Cir.2006).

"[A] court should uphold an award that depends on the arbitrator's interpretation of a collective bargaining agreement if it can find, within the four corners of the agreement, any plausible basis for that interpretation." <u>Coastal Oil of New England, Inc. v. Teamsters Local</u>, 134 F.3d 466, 469 (1st Cir.1998) (<i>quoting</i> <u>El Dorado Technical Servs., Inc. v. Union General De Trabajadores de P.R.</u>, 961 F.2d 317, 319 (1st Cir.1992)) (internal quotation marks omitted). Even erroneous reasoning will not necessarily lead to vacating the award. <u>Id.</u>

### V. DISCUSSION

The Union contends that the Arbitrator erred by concluding their claim was "not procedurally arbitrable". They argue there was an error in finding that Colón and the Union had failed to comply with the CBA's grievance procedures. Yet, here, it is undisputed that the grievance procedure set forth in the CBA required as a first step for an employee to "discuss" any complaints regarding the CBA "with their immediate supervisor". (Docket No. 12-3 at 23). It is also uncontested that Colón did not comply with the first step.

The record shows that the Arbitrator in this case held a hearing before rendering her Award. During that hearing, the testimony of three supervisors and documents presented demonstrated that Colón never properly "discussed" his complaint with any of his direct supervisors following his termination. In addition, Plaintiff's argument as to futility is meritless. Contrary to Colón's allegations, it was not impossible for him to carry out the first step of the grievance process and he had ample opportunity to "discuss" his complaint, as nothing in the CBA required said "discussion" to be in person.

As to the second step of the grievance process, as the Arbitrator highlighted in her Award, the CBA further provides that, "if the immediate supervisor does not answer within the term of five (5) workdays of having been presented the complaint and/or

grievance, of if having answered, his/her answer or solution is not, in the discretion of the employee, satisfactory, the employee may … file a written grievance to the Human Resources Director or his/her authorized representative". This Section B(2) of Article 13 of the CBA also clearly establishes that for "the Complaint and/or Grievance to be valid the specific article and/or section that is being violated must be presented and a meeting will be requested with the Human Resources Representative." *See* Docket No. 12-4 at 8. The record clearly reflects that Plaintiff did not comply with this step either. To this extent, the Arbitrator concluded:

> In the case at bar, we are of the opinion that the Union did not comply with the terms established in Article 13, supra, of the Collective Bargaining Agreement agreed on and executed by both parties. The testimonial and documentary evidence presented by the Employer clearly reveal that the termination of the claimant took place on October 21, 2021. Subsequently, the Union began the process by filing the Form for Processing Claims on October 25, 2021, completely disregarding the first two steps already determined of the Claims and Grievances Procedure. As a result, it followed a claims and grievances process that is not consistent with the one established and agreed on by the parties in Article 13, supra, of the Collective Bargaining Agreement.

On this record, this Court cannot conclude that the Arbitrator's Award was unfounded in reason and fact; that it was based on faulty reasoning; or that it was mistakenly based on a crucial assumption that is concededly a non-fact. It is impossible to state that the Arbitrator dispensed "[her] own brand of

**Civil No. 22-1506(GMM)**
**Page -22-**

industrial justice," United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960). To the contrary, the Arbitrator had ample grounds to conclude that the Union failed to comply with the grievance procedure under the CBA. Therefore, the Arbitrator acted within the scope of her authority in dismissing the entire claim for lack of procedural arbitrability. *See* Union Internacional UAW, Loc. 2415 v. Bacardi Corp., 8 F.4th 44, 52 (1st Cir. 2021); Union de Tronquistas de Puerto Rico, Loc. 901 v. United Parcel Serv., Inc., No. CV 17-1288 (SEC), 2018 WL 1224453, at *1 (D.P.R. Mar. 6, 2018).

## VI. CONCLUSION

The *Motion for Summary Judgment* is **GRANTED** (Docket No. 12), and the Award is confirmed. Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this October 2, 2023.

s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE